UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 05-11735-PBS

| | |
|---|---|
| LAUREL MORRIS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SUN LIFE ASSURANCE | ) |
| COMPANY OF CANADA | ) |
| SUN LIFE ASSURANCE | ) |
| COMPANY OF CANADA | ) |
| US EMPLOYEES GROUP | ) |
| LONG TERM DISABILITY | ) |
| INSURANCE PLAN, | ) |
| JHA, INC. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF"S MEMORANDUM IN SUPPORT OF HER OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS COUNT II –
BREACH OF CONTRACT CLAIM**

For the reasons set out below, this Court is urged to deny the collective defendants' motion to dismiss Count II (breach of contract claim) and to permit the plaintiff Laurel Morris' ("Mrs. Morris") claim for breach of contract to survive and be heard by a jury.

Sun Life argues in its memorandum that Mrs. Morris' sole avenue for relief is a claim under 29 U.S.C. §1132(a)(1)(B). Sun Life contends that Mrs. Morris' claim for breach of contract with an attendant right to trial by jury is pre-empted under ERISA. For the reasons set out below, her contract claim is not barred as a matter of law, and neither is her jury demand.

1

### I.      Welfare Benefit Claims Should Be Construed Under Contract Theories.

### A. Unfunded And Insured Welfare Benefit Plans Are Not Trusts.

Nearly every defendant facing a claim for ERISA welfare benefits, and particularly self-dealing and conflicted insurance companies, argue that the litigation must be governed under a deferential standard of review, placing the insurance company in the same shoes as a true fiduciary. As such, defendant insurers contend that the District Court is only permitted to engage in the most deferential review, just like a probate court reviewing the actions of a trustee overseeing a trust corpus for the benefit of someone else. In support of this argument defendants look to <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989). As pointed out below, <u>Firestone</u> did not explicitly decide that deferential review is required in the welfare benefit context, and when further examined, such deference to a conflicted party does not make sense.

For years, and without sufficient justification, Federal Courts have been applying trust law principles, rather than contract law to employee welfare benefit claims (short and long term disability insurance pay, severance pay, health insurance, etc.). The basis for adopting this choice of law does not make sense; ERISA exempts welfare benefit plans from funding requirements. <u>See</u> ERISA § 301 (a)(1), 29 U.S.C. § 1081 (a)(1). Astonishingly, Courts continue to ignore that unfunded and insured ERISA plans are not trusts.

A trust requires segregating an asset; a corpus that a trustee has a legal right to administer for the benefit of the settlor's designated beneficiaries. In an unfunded ERISA plan, there is no segregated corpus to be administered by a trustee, and therefore, no trust.

The existence of an insurance contract is common in long term disability benefit plans. In fact, most seem to consist of nothing more than an insurance policy. This only bolsters the argument that contract and insurance law should apply and not trusts.

The typical long term disability benefit claim arises under an insurance contract, and does not resemble a traditional trust composition between a settlor donating a res or corpus, to be controlled by a trustee for a beneficiary. In the pension area, ERISA requires employers to fund employee pension plans through the establishment of a trust, or through the purchase of insurance. See ERISA § 403(a), 29 U.S.C. § 1103(a). Absent a funded trust, an employer's creation of an unfunded welfare benefit plan amounts to little more than an unsecured promise to pay a particular benefit. There simply is no sensible reason to treat an insurance company with the deference of a real trustee.

**B. Sun Life Is Not A Fiduciary.**

The application of this theory to Sun Life and JHA, Inc., is no different. Neither is a plan fiduciary simply because it insures long term disability owing benefits to Mrs. Morris. The Seventh Circuit rejected the proposition that an ERISA plan insurer is automatically an ERISA plan fiduciary.

> [W]hy is Reliance a fiduciary when implementing a contract of [disability] insurance? It has promised a particular set of benefits, to be sure, and must act with care in fulfilling its promises, but it did not undertake to evaluate all claims with a thumb on the scale in the participant's favor. Indeed, a genuine fiduciary would go to bat for Wallace as an advocate; but this is not the role Reliance undertook to perform. Pegram v. Herdrich, 530 U.S. 211, 222-26, 231 (2000), holds that a health maintenance organization (another kind of medical insurer) is not an ERISA fiduciary to the extent that it makes decisions about the nature of the care required under the contract. Wallace v. Reliance Standard 318 F.3d 723, 724 (7th Cir. 2003).

In granting trustee status to an insurance company in connection with a welfare benefit claim and treating the claim as purely equitable in basis, may result in an employee's Constitutional right to trial by jury being denied. This presupposes that purely equitable decisions are to be made by judges and not jurors. Even after thirty years of litigation, the Supreme Court has yet to take head on the question of an ERISA plan participant's right to a jury trial.  The First Circuit too has reserved on this issue, but has stated when the record on review has been <u>agreed</u> to by the parties, a jury trial is not available. <u>Recupero v. New England Tel. & Tel. Co.</u>, 118 F.3d 820, 821 (1st Cir. 1998). This implies without agreement as to the record on appeal jury trial remains.

**C.  Plaintiff's Claim Should Be Decided By A Jury.**

The Seventh Amendment provides that "in Suits at Common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." See <u>Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry</u>, 494 U.S. 558, 565 (1990)(the right to a jury trial exists and will be "carefully preserved" where legal rights are at issue). Were a statute provides a specific remedy, the Supreme Court directs the trial court to compare the statutory remedy to the most similar common law remedy in 1791 to determine whether the action would have been adjudicated in the English law courts, as opposed to courts of equity or admiralty. See <u>Brown v. Retirement Committee of the Briggs & Stratton Ret. Plan</u>, 797 F.2d 521, 527 (7th Cir. 1986) *citing* Curtis v. Loether, 415 U.S. 189, 194 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates

4

legal rights and remedies, enforceable in an action for damages in the ordinary courts of law."). Claims arising under ERISA have not fully undergone this test.

The Supreme Court's application of trust law in <u>Firestone</u> did not appreciably impact the outcome of the Court's standard of review decision. There, the Firestone Company's severance pay plan was unfunded, and was not treated as a trust.

In <u>Firestone</u>, the United States Solicitor General argued the unfairness of applying a trust law deferential review standard to plan participant claims arising from an unfunded employee benefit plan. The Solicitor General remarked:

> [T]rust analogies on which other courts and Firestone so heavily rely are wholly in apt to an unfunded plan. . . . [I]t is obviously not a trust, since no source of benefit payments exists separately from the employer's own operating funds. As a result, there is no identifiable and segregated trust property and, perforce, no trustee with both legal title and an equitable duty to deal with such property for the benefit of others. Without these incidents, a trust relationship does not exist. The unfunded plan sponsor has only a contractual obligation to pay benefits from any source."
> Solicitor General's Brief, 1988 WL 1025997 at * 14-15.

The Solicitor General continued and pointed to the special treatment employee benefits should be accorded.

> Recognizing that employee benefit plans, covering hundreds or thousands of participants, are "quite different from the [customary private] trust both in purpose and in nature," the drafters expected the courts to interpret fiduciary principles "bearing in mind the special nature and purposes of employee benefit plans intended to be effectuated by the Act" (ibid.). Thus, Congress contemplated only selective adoption of trust rules "with modifications appropriate for employee benefit plans" (id. at 13).
>
> Judicial experience with employee benefit trusts under Section 302(c)(5) of the LMRA is also totally inapposite. First, LMRA plans are necessarily cast in "trust" form, thus insulating sponsoring employers from the cost of each benefit payment. Second, such trusts are managed not by employer nominees, but by a board consisting of equal numbers of labor and management representatives with an impartial umpire to decide matters when the two trustee groups are deadlocked. See <u>NLRB v. Amax Coal Co.</u>, 453 U.S. at 328-329 These structural arrangements provide

> participants in LMRA plans with tangible and realistic guarantees against biased decision-making that are totally absent in the case of an unfunded, employer-administered ERISA plan. Solicitor General's Brief, 1988 WL 1025997 at * 14-15.

The Supreme Court did not directly address the Solicitor General's argument, because it found an alternative basis to hold that the requested *de novo* review standard governed the former Firestone worker's claims. See Firestone, 489 U.S. at 113-114 ("Applying Firestone's reading of ERISA [calling for deferential review] would require us to impose a standard of review that would afford less protections to employees and their beneficiaries than they enjoyed before ERISA was enacted.").

Since then, in Great-West Life & Annuity Insurance Co. v. Knudsen, 534 U.S. 204 (2002), the Supreme Court cast doubt that trust law provides the only paradigm to review all § 502 claims. Contrary to the trust law foundation raised in Firestone, Great-West suggests that ERISA § 502 (a)(1)(B) claims for benefits are based in contract and seek legal relief. Great-West, seems to revive the Solicitor General's arguments that contract law, not trust law standards govern plan participant benefit claims arising from plans that are not funded through the establishment of a trust.

Great-West Life & Annuity Ins. Co. v. Knudsen, was not a benefit claim case under ERISA, however, the Court focused its analysis on the differences between equitable claims and legal claims.  In Great-West the plan insurer tried to recover from the insured money that the plan insurer had paid for medical care. The insured was injured in an auto collision. The insured recovered money against a third party tortfeasor. The plan contained express language providing for subrogation rights. The insurer sought to enforce the plan's recoupment provisions, but was thwarted by ERISA.

6

The Supreme Court held that, no matter that Great-West couched its claim as one for "restitution" or for an injunction to order the plan participant to pay money, the claim sounded in damages presenting the classic claim for legal relief. The Court stated: "Here, [Great-West] seek[s] . . . to impose liability on [the plan participant] for a contractual obligation to pay money—relief that was not typically available in equity."[1]

The Supreme Court noted in dicta the difference in relief under section 502 (a)(3) and (a)(1)(B):

> In the very same section of ERISA as § 502 (a)(3), Congress authorized a "participant or beneficiary" to bring a civil action "to enforce his rights under the terms of the plan," without reference to whether the relief sought is legal or equitable. 29 U.S.C. § 1132 (a)(1)(B) (1994 ed.). But Congress did not extend the same authorization to fiduciaries. Rather, § 502 (a)(3), by its own terms, only allows for equitable relief. Great West, 534 U.S. at 221.

The logic of the argument that ERISA § 502 (a)(1)(B) provides a contract claim for legal relief is overwhelming. Congress explicitly aimed its fiduciary responsibility provisions at trustees primarily in their role as asset managers, and in so doing, trust law. Consistent with that selective application and incorporation of trust law, ERISA's remedies provision includes both equitable remedies consistent with trust law, and a claim for legal relief to recover benefits due under the plan, a claim that is consistent with contract and insurance law. Because ERISA does not require welfare benefit plans to be funded through a trust, as it does pension plans (unless the pension plan is funded through insurance), and further, because ERISA exempts plans funded through the purchase of

---

[1] Great-West, 534 U.S. at 210. The Court quoted Judge Posner in Wal-Mart Stores, Inc. v. Wells, 213 F.3d 398, 401 (7th Cir. 2000) ("A claim for money due and owing under a contract is 'quintessentially an action at law."), and further quoted Bowen v. Massachusetts, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting) ("Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the

insurance from its trust funding rules makes clear that Congress did not intend that Courts look *only* to trust law to resolve ERISA disputes. As such, Mrs. Morris' claim against Sun Life is nothing more than an insurance dispute, that should be governed by normal contract law entitling her to be heard before a jury of her peers. Therefore, the defendants' motion to dismiss count II for breach of contract should be denied.

                                LAUREL MORRIS,
                                By her attorney,

                                /s/ Jonathan M. Feigenbaum

Date:   10.03.2005              _____
                                Jonathan M. Feigenbaum, Esquire
                                B.B.O. #N546686
                                Phillips & Angley
                                One Bowdoin Square
                                Boston, MA  02114
                                Tel No.: (617)367-8787

                        Certificate of Service

I, Jonathan M. Feigenbaum, hereby that certify that I served the above document electronically through the USDC filing system this day.

                                /s/ Jonathan M. Feigenbaum

Date:   10.03.2005              _____
                                Jonathan M. Feigenbaum, Esquire


Litg\lmor002\Memo.Supp.Opp.Mot.Dism.doc.

---

defendant's breach of legal duty."); and <u>Mertens</u>, 508 U.S. at 255 ("[m]oney damages are, of course, the classic form of *legal* relief.").